# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

COMMSCOPE TECHNOLOGIES LLC,     )
)
                 Plaintiff,   )
Counterclaim Defendant   )
)   NO. 3:16-cv-477
v.                        )
)
DALI WIRELESS, INC.,       )   **Jury Trial Demanded**
)
              Defendant,   )
Counterclaim Plaintiff,   )
)
v.                        )
)
COMMSCOPE CONNECTIVITY LLC,   )
)
     Counterclaim Defendant.   )

---

## DALI WIRELESS, INC.'S OPPOSITION TO COMMSCOPE'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

---

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

LEGAL STANDARDS ............................................................................................ 1

I.      JUDGMENT AS A MATTER OF LAW ........................................................ 1

II.     INVALIDITY UNDER 35 U.S.C. §§ 102, 103, AND 112 ............................. 1

III.    INFRINGEMENT ........................................................................................... 2

ARGUMENT ............................................................................................................ 3

IV.    THE JURY CORRECTLY FOUND THAT THE '521 PATENT IS VALID .............................................................................................................. 3

        A.    CommScope Failed to Prove Anticipation by Bauder .................................... 3

                1.    Dali directly engaged with, and rebutted, CommScope's theory with substantial evidence, including non-conclusory expert testimony ..................................................................... 3

                2.    CommScope's position is inconsistent with Bauder's disclosure. .................................................................................. 6

                        a)    CommScope's first premise fails. ........................................... 7

                        b)    CommScope's second premise fails. ....................................... 7

                        c)    CommScope's third premise fails. ........................................... 8

                3.    Dr. Kenney did not distinguish Bauder based on a feature that is not a claim limitation. .............................................. 9

                4.    Dr. Kenney is not required to reverse engineer Bauder. .................... 10

        B.    CommScope Failed to Prove Anticipation by Wright .................................... 10

                 1.    CommScope failed to meet or acknowledge its heightened burden. ............................................................................................... 10

                2.    CommScope's argument that Wright anticipates fails on the merits.......................................................................................... 11

        C.    CommScope Failed to Prove Anticipation by Khan .................................... 13

                 1.    Khan does not teach the "establishing" limitation of the

training phase....................................................................13

      2.    Khan does not expressly teach the "generating a digital lookup table key…" or "retrieving from the lookup table" limitations. ..................................................15

      3.    CommScope's argument that Khan is enabled is irrelevant. ..............................................................16

V.     THE JURY CORRECTLY FOUND THAT THE '521 PATENT IS INFRINGED........................................................16

    A.   "…Performing a Training Phase…and Performing an Operating Phase…" ..............................................16

    B.   "…Switching a Controller to a Nonoperating State…"................18

VI.    THE JURY CORRECTLY FOUND THE ASSERTED CLAIMS OF THE '473 PATENT ARE VALID ..................................19

    A.   Sabat Does Not Anticipate Any Claim of the '473 Patent ............19

    B.   Sabat in Light of Bauman Does Not Render Claims 15 and 21 Obvious ......................................................20

    C.   CommScope's § 112 Arguments Are Based on Misreading the '473 Patent ...................................................21

VII.   THE JURY CORRECTLY FOUND THE ION-E INFRINGES THE ASSERTED CLAIMS OF THE '473 PATENT ....................22

    A.   CommScope's Expert Admitted the ION-E Infringes Claims 6, 11, and 21..................................................22

    B.   The ION-E Is "Capable of Packetizing" and Infringes Claims 9, 14, and 15 ................................................23

    C.   CommScope Cannot Rewrite the Claims to Avoid Infringement ................24

VIII.  THE COURT SHOULD DENY COMMSCOPE'S PRO FORMA REQUEST FOR A NEW TRIAL................................25

CONCLUSION................................................................25

CERTIFICATE OF SERVICE ....................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed. Cir. 1984)..................................................................................10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................................1

*Arctic Cat, Inc. v. Bombardier Rec. Prods., Inc.*,
  No. 14-cv-62369-BLOOM/Valle, 2016 U.S. Dist. LEXIS 185998 (S.D. Fla.
  May 2, 2016)..................................................................................................................18

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*,
  853 F.2d 1557 (Fed. Cir. 1988).....................................................................................3

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
  661 F.3d 629 (Fed. Cir. 2011)....................................................................................1, 8

*Dow Chem. Co. v. Sumitomo Chem. Co.*,
  257 F.3d 1364 (Fed. Cir. 2001)...................................................................................17

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016)..............................................................................14

*Erfindergemeinschaft UroPep Gbr v. Eli Lilly & Co.*,
  276 F. Supp. 3d 629 (E.D. Tex. 2017).........................................................................20

*Floe Int'l, Inc. v. Newmans' Mfg.*,
  No. 04-5120, 2007 U.S. Dist. LEXIS 20634 (D. Minn. Mar. 12, 2007) ....................15

*Hamilton Beach Brands, Inc. v. f'real Foods, LLC*,
  908 F.3d 1328 (Fed. Cir. 2018)...................................................................................21

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010).......................................................................................5

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
  757 Fed. Appx. 974 (Fed. Cir. 2019)............................................................................3

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342 (Fed. Cir. 2012)..................................................................................1, 2

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
  381 F.3d 1142 (Fed. Cir. 2004).....................................................................................2

*Krippelz v. Ford Motor Co.*,
   667 F.3d 1261 (Fed. Cir. 2012).................................................................5, 15

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007).....................................................................................20

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006)...................................................................17

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996).......................................................................................2

*Melchior v. Hilite Int'l, Inc.*,
   665 Fed. Appx. 894 (Fed. Cir. 2016).............................................................9

*MobileMedia Ideas LLC v. Apple Inc.*,
   780 F.3d 1159 (Fed. Cir. 2015)..................................................................4, 5

*Navico Inc. v. ITC*,
   696 Fed. Appx. 989 (Fed. Cir. 2017)...........................................................21

*Praxair, Inc. v. ATMI, Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008)...................................................................14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000).......................................................................................1

*Schumer v. Lab. Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002).....................................................................1

*Simpson v. James*,
   903 F.2d 372 (5th Cir. 1990) .........................................................................5

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
   487 F. Supp. 2d 830 (E.D. Ky. 2007) ............................................................4

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002).....................................................................2

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)...................................................................10

*Tinnus Enters., LLC v. Telebrands Corp.*,
   369 F. Supp. 3d 704 (E.D. Tex. 2019) .........................................................25

*U.S. Philips Corp. v. Windmere Corp.*,
   861 F.2d 695 (Fed. Cir. 1988).......................................................................3

**Statutes**

35 U.S.C. § 102 ...................................................................................................................1, 3

35 U.S.C. § 103 ......................................................................................................................1

35 U.S.C. § 112 ...................................................................................................................1, 21

**Other Authorities**

Fed. R. Civ. P. 50 ..................................................................................................................1

Rule 30(b)(6) ........................................................................................................................22

Rule 50(b) .............................................................................................................................20

## INTRODUCTION

Defendant and Counterclaim Plaintiff Dali Wireless, Inc. ("Dali") hereby opposes CommScope Technologies LLC's and CommScope Connectivity LLC's Motion for Judgment as a Matter of Law and New Trial.

## LEGAL STANDARDS

## I.   JUDGMENT AS A MATTER OF LAW

Judgment as a matter of law ("JMOL") is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50. In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence (*id.*) which are "jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151.

## II.   INVALIDITY UNDER 35 U.S.C. §§ 102, 103, AND 112

Anticipation requires clear and convincing evidence that a single prior art reference expressly or inherently discloses each and every element of the claim. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002) (summary judgment of anticipation denied). Anticipation is a question of fact. *Id.* at 1315. A prior art reference inherently discloses a limitation only if it necessarily includes that limitation. *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011) (affirming denial of JMOL as to anticipation).

Obviousness is a question of law based on underlying factual findings. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (reversing JMOL of invalidity and remanding). At all times, the burden is on the defendant to establish by clear and convincing evidence that the patent is obvious by demonstrating that a person of ordinary skill in the art would have been motivated to combine the prior art to achieve the claimed invention with a reasonable

1

expectation of success. *Id.* An obviousness inquiry **requires** examination of (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness. *Id.*

Whether a specification meets the written description requirement is a question of fact, but enablement is a question of law with factual underpinnings. *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149 (Fed. Cir. 2004) (concluding that claimed invention sufficiently described and enabled). A claimed invention has sufficient written description support if a person of ordinary skill in the art would recognize what is claimed from the words, figures, formulas, etc. in the specification. *Id.* at 1554. A specification is enabling of it teaches a person of ordinary skill in the art how to practice the full scope of the claimed invention without undue experimentation. *Id.* at 1155. A specification is not required to disclose what is well-known in the art or "every last detail." *Id.* at 1156. Lack of written description and enablement must be shown by clear and convincing evidence. *Id.* at 1149.

## III.   INFRINGEMENT

Determining infringement first requires determining the scope of the claims as a matter of law, and then comparing the properly construed claim to the accused device "to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002) (denying JMOL as to noninfringement). Claim construction is an issue of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). In a case tried to a jury, it is normally the jury's role to compare the properly construed claims to the accused device. *Teleflex*, 299 F.3d at 1323. A jury's finding of infringement is reviewed for lack of substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1323-24.

2

## ARGUMENT

## IV.   THE JURY CORRECTLY FOUND THAT THE '521 PATENT IS VALID

### A.   CommScope Failed to Prove Anticipation by Bauder

The jury correctly recognized that CommScope failed to carry its heavy burden of proving that claim 1 of U.S. Patent No. 9,031,521 ("the '521 patent") (A910-22)[1] is invalid under § 102 as anticipated by U.S. Patent Application Pub. No. 2003/0035494 to Bauder, et al. ("Bauder") (A439-48 [Plaintiff's Trial Exhibit PTX-315]) because CommScope has failed to show by clear and convincing evidence that Bauder discloses each and every element of claim 1. At trial, Dali established that Bauder is distinguishable from claim 1 because it fails to disclose an operating phase comprising "switching a controller off to disconnect signal representative of the output of the power amplifier." The Court construed this limitation as "switching a controller to a nonoperating state to disconnect signal representative of the output of the power amplifier." (Dkt. No. 97 at 24). But, as Dali's expert, Dr. J. Stevenson Kenney testified, Bauder lacks this disclosure.

#### 1.   Dali directly engaged with, and rebutted, CommScope's theory with substantial evidence, including non-conclusory expert testimony.

CommScope claims that Dr. Kenney's testimony as to Bauder was "entirely conclusory"[2] and did not substantively rebut each part of CommScope and Dr. Wood's argument.[3] (Mot. at 4-5). To the contrary, Dr. Kenney's testimony was based on substantial evidence weighed by the

---

[1] Citations to "A#" and "SA#" are to the public and sealed appendices filed by CommScope at Dkt. Nos. 442 and 444, respectively, unless otherwise indicated.

[2] As a threshold issue, even if CommScope were correct (it is not), Bauder and the contradictory and inconsistent testimony offered by CommScope and its expert are sufficient to justify the jury's finding that Bauder does not anticipate claim 1, as shown below at IV.A.2, regardless of Dr. Kenney's testimony. *See Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988) (opining that expert testimony is not necessary to rebut validity challenge); *U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 704 (Fed. Cir. 1988) ("The jury was not required to accept his expert testimony, even if it was uncontradicted.").

[3] CommScope relies on *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 757 Fed. Appx. 974 (Fed. Cir. 2019) to argue that JMOL is appropriate because Dali allegedly did not dispute the substance of Dr. Wood's testimony. In that case, Imperium's expert, Dr. Wright, failed to even state which claim element was missing in a particular prior art reference. *Id.* at 978-79. By contrast, Dr. Kenney expressly disputed the substance of Dr. Wood's testimony that Bauder discloses "switching a controller off to disconnect signal representative of the output of the power amplifier" with particular reference to Figure 2 of Bauder. (*See* A369 at 53:21-54:4, 54:14-55:2; A371 at 64:2-4, 64:21-22; A372 at 66:11-15, 66:19-25). Accordingly, *Imperium* is inapposite.

jury. *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 487 F. Supp. 2d 830, 851 (E.D. Ky. 2007) ("Contrary to the remanufacturers' contention, for Dr. Reinholtz to find that a cartridge brand satisfies a particular claim limitation is not conclusory; rather it is merely drawing a conclusion."). Dr. Kenney's conclusions were based on his review of Bauder, particularly Figure 2 upon which both Dr. Wood and Dr. Kenney extensively relied. (*See, e.g.,* A347-48 at 99:8-101:2; A369 at 53:21-54:24). Figure 2 shows a transmit chain 205 and a receive chain 207 coupled together by coupler 265. (A441). Output from the power amplifier 260 of the transmit chain passes through the coupler to the receive chain where the signal then passes through four components, including a training circuit 290, before the signal passes through the lookup table 225 of the transmit chain. *Id.* Much of Dr. Kenney's testimony relates to analyzing Dr. Wood's demonstratives describing Bauder. (*See, e.g.*, A372 at 67:24-68:5).

Dr. Kenney's review of Bauder enabled him to succinctly conclude and explain to the jury that nowhere does Figure 2 clearly and convincingly disclose "switching a controller to a nonoperating state to disconnect signal representative of the output of the power amplifier." (A369 at 53:21-54:4) ("The main feature here is on the left-hand side. There is no switch. There is no means to disconnect that signal of the power amplifier in the feedback path, nor is there anything that, in my opinion, was equivalent to that."); (*see also* A369 at 54:14-55:2). Statements from CommScope, such as "Dali's expert glossed over and ignored the training circuit" (Mot. at 5), themselves gloss over and ignore Dr. Kenney's explicit discussion of the training circuit. (*See, e.g.,* A371 at 64:2-4; A372 at 66:11-15, 66:19-25). If CommScope believed that Dr. Kenney's testimony was conclusory, it had a full opportunity to address that testimony when its counsel cross-examined Dr. Kenney about Bauder. (*See, e.g.*, A372 at 66:6-25).

The cases cited by CommScope regarding conclusory expert testimony are inapplicable to the present case. In *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015), MobileMedia's expert attempted to rebut Apple's expert's detailed testimony regarding why it would have been obvious to a person of ordinary skill in the art that certain prior art features could be implemented in a particular way by stating only, "I don't see evidence for that." *Id.* at 1172.

Here, the simple question is whether Bauder discloses that the training circuit is a controller that disconnects signal from the power amplifier when it is switched off. With reference to figures in Bauder, including Dr. Wood's annotated versions, Dr. Kenney observed and concluded that Bauder does not disclose that the training circuit has this feature. (*See* A369 at 53:21-54:4, 54:14-55:2; A371 at 64:2-4, 64:21-22; A372 at 66:11-15, 66:19-25; A372 at 66:6-15, 67:24-68:5). Thus, *MobileMedia* is inapposite.

Citing *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1269 (Fed. Cir. 2012), CommScope alleges that Dr. Kenney did not meaningfully address that the "most natural interpretation" of Figure 2 is that signal from the power amplifier is disconnected from the lookup table when the training circuit stops operating. (Mot. at 5-6). In *Krippelz*, the plaintiff's expert disputed whether the figures of a prior art reference clearly showed a lamp adjacent to the window of an automobile, even though they plainly did. *Krippelz,* 667 F.3d at 1269. Since there was no question that the figures showed a lamp adjacent to the window, the Federal Circuit held that expert testimony could "not create an issue of fact if none otherwise exists." *Id*. By contrast, Bauder's Figure 2 simply does not show what CommScope wants it to show. In fact, because Bauder makes no such disclosure and actually contradicts Dr. Wood's premises (*see* IV.A.2, *infra*), Dr. Wood was forced to infer the alleged limitations and add them to Bauder through heavy annotations to a demonstrative version of Figure 2 to make his argument (*see* Mot. at 5), even though the added details are inconsistent with Bauder. (*Supra*, IV.A.2; A444, ¶ [0014]). Dr. Kenney disputed the details inferred and added by Dr. Wood. (A372 at 66:6-15). In case of conflicting expert testimony, the jury is entitled to make credibility determinations and to believe the witness it considers "more trustworthy." *Simpson v. James*, 903 F.2d 372, 377 (5th Cir. 1990) (denying JMOL); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010) ("the jury was free to disbelieve Microsoft's expert…and credit i4i's expert"; denying JMOL as to anticipation of patent claim). Thus, *Krippelz* does not apply.

### 2.      CommScope's position is inconsistent with Bauder's disclosure.

One of CommScope's major themes at trial was "consistency." (*See, e.g.*, A371 at 61:19-20 ("Let's go back to my favorite subject of consistency.")). While CommScope has focused on Dali's consistency (*id*. at 61:20-21 ("You don't dispute that Dali has to be consistent in this case, correct?")), it has ignored the inconsistency of its own positions. For example, CommScope's invalidity positions should be consistent with the prior art references on which it relies. One of CommScope's positions is that Bauder discloses "switching a controller off to disconnect signal representative of the output of the power amplifier" based on three premises:

(1)   Bauder's training circuit is a "controller."
(2)   Bauder teaches this controller is switched to a "non-operating state" during the normal transmission mode
(3)   When Bauder's controller is switched to a non-operating state during the normal transmission mode, no signal passes through it. This means the feedback signal is necessarily disconnected from the lookup table, and it would be *physically impossible* for the signal from the PA to remain connected.

(Mot. at 4) (emphasis in original). Put another way, CommScope claims that "Bauder expressly teaches that the training circuit [alleged controller] 'operates only' during the training mode" (Mot. at 2, *quoting* A445, ¶ [0033]) which "…means the circuit [alleged controller] is switched to a non-operating state during the operating phase." (*Id*., *citing* A348 at 103:15-23 ("if it's only operating in the training mode, it *must not* be operating in the calling mode") (emphasis added)). Therefore, CommScope alleges, Bauder teaches "that the signal from the PA is disconnected during the operating phase when the training circuit is switched to a non-operating state." (Mot. at 2). If even one premise is inconsistent with, or contradicted by, Bauder, CommScope's anticipation argument falls apart. CommScope argues that "Dali did not dispute" the substance of these three premises (Mot. at 4), but Dali and its expert, Dr. Kenney, have disputed each of them with substantial evidence. (*Supra*, IV.A.1). Since all three premises are inconsistent with Bauder's disclosure, it does not anticipate claim 1.

### a)       CommScope's first premise fails.

CommScope's first premise fails because, as explained above, nothing in Bauder discloses that the training circuit is a switch or that it is a controller responsible for disconnecting signal from the power amplifier when switched to a nonoperating state. (*Supra*, IV.A.1). As Dr. Kenney testified, consistent with Bauder, "[t]he training circuit is what writes the value into the look-up table," and "[i]t's what computes and writes the value," but it is "not what disconnects the power amplifier." (A371 at 64:2-4; *see also id.* at 64:21-22; A372 at 66:11-15, 66:19-25). CommScope relies on the testimony of its expert, Dr. Wood, for support, but Dr. Wood failed to identify any part of Bauder showing that "not operating" equals "disconnecting."

### b)       CommScope's second premise fails.

CommScope's second premise, that the training circuit must be in a non-operating state during normal transmission mode, is based on CommScope's mischaracterization of Bauder's disclosure that "[t]he training circuit 290 would *generally* operate only when the predistortion system 200 is in training mode." (A445, ¶ [0033]) (emphasis added). CommScope takes the "operate only" phrase in this sentence out of context, ignoring that it is qualified by "generally." (Mot. at 2). "Generally" does not mean "always" or "necessarily," but implies that there could be times when the training circuit operates during normal transmission mode.

CommScope's second premise also contradicts Bauder's express statement that that "the predistorter training circuit *may* operate while the transceiver is in its *normal transmit mode*." (A444, ¶ [0014]) (emphasis added). CommScope and Dr. Wood cannot reconcile their second premise with this statement from Bauder, and Dr. Wood's testimony and CommScope's motion fail to address it. Consistent with Bauder, Dr. Kenney found no evidence to support CommScope's contention that the training circuit operates only in the training mode (i.e., not in the normal transmission mode) because the training circuit is responsible for calculating values for the lookup table but not disconnecting signal from the power amplifier. (A372 at 66:6-25).

c) **CommScope's third premise fails.**

Bauder's disclosure of a training circuit operating in normal transmission mode also contradicts CommScope's third premise, which appears to contend that Bauder inherently discloses that signal from the power amplifier is disconnected during normal transmission mode. But inherency can only be established when the prior art must necessarily include the claimed limitation. *See Bettcher*, 661 F.3d at 639-40. If the "training circuit may operate while the transceiver is in its normal transmit mode" (A444, ¶ [0014]), CommScope's contention that "it would be impossible that the signal from the power amplifier would still be connected during the normal transmission mode" is necessarily false, not inherent. (Mot. at 3-4). When CommScope's counsel prompted Dr. Kenney to agree that no signal passes through the training circuit during normal transmission mode, Dr. Kenney explained that the training circuit's responsibility is to calculate values for the lookup table, not to disconnect the feedback signal from the power amplifier. (A372 at 66:6-15, 67:245-68:5). Since CommScope's three premises are unsupported or contradicted by Bauder, the jury reasonably concluded that Bauder does not clearly and convincingly anticipate claim 1.

CommScope might argue in its reply that since Bauder discloses a training circuit that operates in the normal transmission mode as well as a training circuit that operates only in the training mode, Bauder inherently discloses embodiments in which signal from the power amplifier is disconnected during normal transmission mode. Such a new argument would contradict the argument in CommScope's motion and would be unsupported by Dr. Wood's testimony, Bauder's disclosure, other evidence in the record, and the law. *See Bettcher Indus.*, 661 F.3d at 639 (inherency "may not be established by probabilities or possibilities"). Bauder's figures and specification teach that the training circuit can operate during both the training or normal transmission modes because signal representative of the output of the power amplifier is never disconnected. Although it is true that Bauder's transmit chain can work "alone, separate from the receive chain" during normal transmission mode (A444, ¶ [0028]), CommScope has failed to show that Bauder equates *usage* with *connection* or that working "alone" means that the connection

8

between the transmit chain and the receive chain is severed during normal transmission mode. Bauder discloses that switching the training circuit on and off affects the training circuit's calculation functionality, but it does not disclose that the training circuit connects and disconnects signal representative of the power amplifier. (*See* A372 at 66:6-15).

### 3. Dr. Kenney did not distinguish Bauder based on a feature that is not a claim limitation.

CommScope alleges that Dr. Kenney improperly distinguished Bauder from claim 1 based on the non-existent limitation that "the controller must be a switch." (Mot. at 5). CommScope's argument fails because it mischaracterizes Dr. Kenney's testimony; Dr. Kenney never stated that "the controller must be a switch." Rather, he explained that Bauder does not disclose "…switching a controller to a nonoperating state to disconnect signal representative of the output of the power amplifier…," as required by claim 1 and this Court's claim construction (A921 at 10:57-58; Dkt. 97 at 24) because Bauder does not disclose either a switch for turning a controller off or a controller to disconnect signal representative of the output of the power amplifier: "There is no switch. There is no means to disconnect that signal of the power amplifier in the feedback path, nor is there anything that, in my opinion, was equivalent to that." (A369 at 54:1-4)[4]; (*see also* A369 at 54:22-24) ("In the '521 there's a means to disconnect that feedback path. In this patent [Bauder] there is none."). Dr. Kenney distinguished Bauder from the express language of claim 1, as construed by the Court, and never claimed that the controller must be a switch.

The present case is distinguishable from *Melchior v. Hilite Int'l, Inc.*, 665 Fed. Appx. 894 (Fed. Cir. 2016) and the other decisions cited in footnote 3 of CommScope's motion because Dali and Dr. Kenney's positions both adhere to the language of claim 1 as construed by the Court.

---

[4] CommScope claims that, "[a]t trial, Dali's expert abandoned the reasoning relied on at summary judgment" and now Dali allegedly argues that "Bauder does not disclose a 'switch.'" (Mot. at 1). At best, CommScope is arguing semantics. Dali and its expert have consistently explained that Bauder does not disclose disconnecting the signal that is representative of the power amplifier as required by claim 1 of the '521 patent. (*Compare, e.g.*, Dkt. 254-1 at 39 *to* A371 at 64:21-22 and A372 at 66:6-15).

####        4.        Dr. Kenney is not required to reverse engineer Bauder.

CommScope argues that "no reasonable jury could find that the feedback signal from the PA remains connected when Bauder's training circuit stops operating in the normal transmission mode" because it would be "physically impossible." (Mot. at 6). However, Bauder explicitly contradicts CommScope's position. (*Supra,* IV.A.2). Moreover, whether Bauder's disclosed invention is physically possible is irrelevant. CommScope has cited no law requiring Dali to prove that the invention disclosed by Bauder is enabled.

### B.        CommScope Failed to Prove Anticipation by Wright

CommScope argues that if the jury's verdict of infringement of claim 1 of the '521 patent stands, then claim 1 is anticipated by U.S. Patent No. 6,587,514 to Wright et al. ("Wright") (A450-544, PTX-271]). (Mot. at 6). At trial, Dr. Wood's testimony that Wright anticipates claim 1 was entirely conclusory, with no explanation for the jury about how Wright allegedly discloses each element, except for the "switching" limitation. (A350 at 110:21-111:3). Thus, CommScope did not provide the jury with clear and convincing evidence that Wright anticipates claim 1, and CommScope's motion should be denied.

####        1.        CommScope failed to meet or acknowledge its heightened burden.

As explained by Dr. Kenney, the USPTO has already considered Wright and found that it is distinguishable from claim 1. (A369-370 at 56:11-57:21).[5]  It is well settled that when a party challenging the validity of a patent claim relies on an anticipatory reference which has already been considered by the patent examiner, the challenger faces an enhanced burden because the USPTO is entitled to deference and "presumed to have properly done its job." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) (reversing judgment of invalidity and remanding), *abrogated on other grounds, Therasense, Inc. v. Becton, Dickinson & Co.*, 649

---

[5] U.S. Patent No. 6,697,436 issued to Wright, et al. ("the '436 patent") is cited on the '521 patent as having been considered by the patent examiner. The '436 patent is related to, and shares a common provisional application with, the asserted Wright reference. Since, excepting the claims and minor typographical differences, the specifications of the '436 patent and the asserted Wright reference are substantially identical, the disclosure of the asserted Wright reference was effectively before the patent examiner. (*See* Dkt. 207-1 at A1158-59, ¶ 69).

F.3d 1276 (Fed. Cir. 2011). By not acknowledging that Wright has already been before the examiner, Dr. Wood gave no weight to the patent examiner's judgment and failed to explain why the examiner was wrong about Wright. Accordingly, CommScope has not met its enhanced burden with regard to Wright.

### 2. CommScope's argument that Wright anticipates fails on the merits.

Dr. Wood's invalidity opinion as to Wright, as summarized in CommScope's motion, is essentially that Figure 33 of Wright discloses an "RF MUX" which he contends is a "multi-way selector switch." (Mot. at 7). He further alleges that, since the RF MUX is the same as the accused feature of the FlexWave Prism, if the FlexWave Prism infringes claim 1 of the '521 patent, Wright must anticipate claim 1. (*Id*.). However, Dr. Kenney explained that Dr. Wood's interpretation of Wright is incorrect.

Dr. Kenney testified that Wright does not disclose a way to disconnect the power amplifier in the feedback path. (A370 at 57:17-21). The feature that Dr. Wood contends is the claimed "switching a controller off to disconnect…" limitation in Wright is actually "the action of the capture buffer…that captures a certain amount of information about the power amplifier and then starts processing that information, but the flow of information is never interrupted." (*Id*. at 57:23-58:2). Even though Wright and the FlexWave Prism both contain capture buffers, "it's the way the capture buffers are used that says whether it meets the claim element or not." (A371 at 63:4-13). As Dr. Kenney explained, the capture buffers in Wright "do not disconnect the signal representative of the power amplifier." (A371 at 62:15-17). CommScope's motion fails to address this point and Dr. Wood failed to address this point as well.[6] (A370 at 57:23-58:5).

CommScope asserts that Dr. Kenney did not dispute that the RF MUX is a "two-way switch" that can "select from a number of inputs to send the output of the power amplifier to the feedback path for adaption" (Mot. at 7), but whether or not the RF MUX has these particular characteristics is irrelevant if the remainder of the claim element is not satisfied. The Court

---

[6] Neither CommScope nor Dr. Wood can claim that they were unaware of this issue at trial because Dr. Kenney explicitly raised this issue in his November 5, 2018, expert validity report. (Dkt. 207-1 at A1275-76, ¶¶ 338-39).

construed claim 1 to require "switching a controller to a nonoperating state to disconnect signal representative of the output of the power amplifier," not just a mere "switch." (Dkt. 97 at 24). Even if the RF MUX is a switch that can select from a number of inputs, to anticipate claim 1, Wright must also disclose a controller that is put into a non-operating state by the switch. Dr. Kenney testified that Wright lacks such a disclosure. (A370 at 58:8-18). Moreover, in all of Dr. Wood's testimony about Wright, Dr. Wood failed to identify anything in Wright corresponding to the claimed controller that is put into a non-operating state by the switch. (A350 at 109:3-112:4).

CommScope "agrees that a toggle switch," like the one disclosed by Wright, "does not meet the more specific limitation about a 'controller' being in a 'nonoperating state.'" (Mot. at 8). But, CommScope alleges that since Dali asserted that the switch in the FlexWave Prism meets the "switching" limitation of claim 1, "consistency" requires that Wright's toggle switch should invalidate claim 1. (*Id*.). CommScope mischaracterizes Dali's infringement argument by focusing on a single annotation in one of Dr. Kenney's demonstrative exhibits while ignoring his testimony regarding the claim element. (*Id*. at 8-9). In the demonstrative, Dr. Kenney circled a component of the FlexWave Prism as corresponding to the switch, but the demonstrative did not specifically show the claimed controller. (A282 at 61:4-12). However, in explaining how the FlexWave Prism meets the element at issue, Dr. Kenney testified that the switch is "associated with a logic that controls it that is on the FPGA" and "all those things being on the ALPACA board." (*Id*. at 61:13-17). When cross-examined, Dr. Kenney explained why he circled the switch on the demonstrative but did not circle a controller: "I circled the switch because the—there's not a controller block on this diagram, but I did describe such a controller." (A291 at 28:13-15). CommScope's motion inexplicably ignores this testimony.

Dali agrees with CommScope that it is important to be consistent. As explained above, Dali and its expert have consistently applied the limitations of claim 1, as construed by the Court, with respect to infringement and validity. This distinguishes the present case from the cases cited by CommScope in which parties tried to construe claims differently with respect to infringement and validity. (Mot. at 6-9). By contrast, CommScope admits that its invalidity analysis is inconsistent

with the Court's construction of the "switching" limitation of claim 1. (*Id.* at 8). If CommScope were to correctly apply the Court's construction and acknowledge all of Dr. Kenney's testimony regarding the claimed controller, it would be forced to admit that Dali and the patent office are correct: Wright does not anticipate claim 1 of the '521 patent.

## C. CommScope Failed to Prove Anticipation by Khan

The jury reasonably found that U.S. Patent No. 5,959,499 to Khan et al. ("Khan") (A546-55 [PTX-248]) does not anticipate claim 1 because Khan fails to disclose multiple limitations.

### 1. Khan does not teach the "establishing" limitation of the training phase.

Claim 1 requires "establishing pre-computed distortion contributions based on pre-compensation training feedback signals representative of output of the power amplifier." Dr. Kenney determined that Khan does not disclose this limitation because the pre-compensation training feedback signals disclosed by Khan are not "representative of output of the power amplifier" because dominant poles remove much of the power amplifier's signal. (A368 at 50:16-51:2). According to Khan, the signal is filtered through dominant poles (26, 27) which "limits the bandwidth of the analog feedback system." (A552 at 2:66-67). Khan further explains that, "[b]y using a dominant pole, however, the system is necessarily restricted in its useful operating bandwidth," and "a tradeoff between operating bandwidth and stability is encountered." (A553 at 3:35-40). According to Dr. Kenney, he would not consider the signals passed through the dominant poles to be "in any way representative of the output of the power amplifier." (A368 at 51:1-2).

Dr. Wood argued that Khan teaches the "establishing" limitation of claim 1, but, in the five lines that he devoted to it, he failed to address Khan's dominant poles, the fact that they remove much of the power amplifier's signal, and whether the signals disclosed by Khan meet the "representative of the output of the power amplifier" part of the limitation. (*See* A349 at 106:10-17).[7] To show that Khan anticipates claim 1, CommScope must prove by clear and convincing

---

[7] CommScope and Dr. Wood cannot claim that they were unaware that Dr. Kenney disputed whether Khan discloses the "representative of the output of the power amplifier" part of the limitation because he specifically addressed it in his November 5, 2018 expert validity report. (See Dkt. 207-1 at A1185, ¶ 121).

evidence that Khan discloses all elements of claim 1. *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1328 (Fed. Cir. 2008) (affirming district court's denial of motion for new trial or JMOL as to anticipation). Since Dr. Wood failed to address whether Khan discloses all of the "establishing" limitation, his testimony is insufficient to prove that Khan anticipates claim 1.

CommScope's statement that Khan discloses this limitation is conclusory because none of the cited parts of Khan clearly and convincing show on their face that the pre-compensation training feedback signals are representative of output of the power amplifier. (Mot. at 9-10). For example, when CommScope contends that "Khan expressly states the 'feedback signal' is 'create[d]' from the 'PA output'" (Mot. at 10, *quoting* A552 at 2:53-55), reviewing Khan's specification demonstrates that the full quote ("The PA output signal is primarily sent to the transmit antenna (19), but a small amount is sampled with a coupler (18) and used to create the feedback signal") demonstrates the feedback signal is not representative of the output of the power amplifier, but it is created using only a small sample of it. (A552 at 2:52-55). CommScope never explains why the parts it cites from Khan clearly and convincingly show that the feedback signal of Khan is representative of the power amplifier.

CommScope alleges that Dr. Kenney's testimony is incorrect because he improperly used a construction of the "representative" claim term that Dali never sought. (Mot. at 11-12). Dr. Kenney did not perform claim construction. He simply applied the plain language of the limitation and concluded, based on his analysis of Khan and his expertise in this area, that Khan does not disclose the entirety of the "establishing" limitation. When a court does not construe a term or orders that ordinary meaning applies, expert testimony on the understanding of a skilled artisan is "appropriate to assist the jury." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) (declining to exclude expert testimony). In contrast to Dr. Kenney, Dr. Wood did not address the "representative" part of the limitation at all CommScope has cited no case permitting CommScope to ignore parts of claim limitations just because they were not specifically construed by the Court.

Despite CommScope's claim that Dr. Kenney's reasons for distinguishing Khan from claim 1 would exclude a preferred embodiment (Mot. at 11), Dr. Kenney's analysis is consistent with the claims and specification of the '521 patent. CommScope alleges that, "[l]ike the '521 patent, Khan shows [its] process includes the signal pass through two filter boxes" (Mot. at 10), as if all filters are the same. However, aside from pointing to filters in both the '521 patent and Khan, CommScope does not explain why, or cite any testimony or other evidence showing that, the signals passing through the "dominant pole" filters of Khan (A552 at 2:66) are the same as the signals passing through the "analog receiving filters" of the '521 patent (A914; A919 at 5:16) with respect to the "representative of output of the power amplifier" limitation. Accordingly, the jury could reasonably conclude that Khan does not disclose this limitation in its entirety.

### 2. Khan does not expressly teach the "generating a digital lookup table key…" or "retrieving from the lookup table" limitations.

To rebut Dr. Kenney's conclusion that Khan does not disclose the "generating a digital lookup table key…" or "retrieving from the lookup table…" limitations, CommScope relies on attorney argument to show alleged "[e]xpress teaching[s]" of limitations in the specification and Figure 8 of Khan. (Mot. at 12). These sections use some of the individual terms from claim 1, but neither section recites the actual limitations. At trial, Dr. Wood never testified regarding these sections of Khan or explained how this language constitutes "express teachings" of claim 1. CommScope's discussion of these sections of Khan is attorney argument, which is an insufficient basis to support CommScope's JMOL. *See Floe Int'l, Inc. v. Newmans' Mfg.*, No. 04-5120 (DWF/RLE), 2007 U.S. Dist. LEXIS 20634, at *12-13 (D. Minn. Mar. 12, 2007) (denying request for JMOL based on attorney argument), *citing Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence.").

CommScope cites *Krippelz*, 667 F.3d at 1269, for the proposition that "an express teaching trumps an expert's opinion." (Mot. at 13). *Krippelz* is distinguishable because Dr. Kenney's testimony does not conflict with an express teaching of Khan. Neither expert testified as to the teachings in the two quoted sections of Khan. Moreover, it is not clear that the language used in

those sections corresponds to the limitations of claim 1 because those sections of Khan do not use the exact terms expressed in claim 1.

### 3.    CommScope's argument that Khan is enabled is irrelevant.

CommScope devotes several paragraphs to disputing whether Khan's disclosure is enabling. (Mot. at 13-14). Those paragraphs are irrelevant; Dali did not argue Khan is not enabled.

## V.    THE JURY CORRECTLY FOUND THAT THE '521 PATENT IS INFRINGED

Dr. Kenney explained how the FlexWave Prism meets each limitation of claim 1 (*see, e.g.*, A279-83 at 52:3-67:1; A288 at 15:5-16:22). CommScope disputes only whether the FlexWave Prism meets two elements: (1) "performing a training phase…and performing an operating phase" and (2) "switching a controller off to disconnect signal…" (Mot. at 14-19). The jury correctly found that Dali presented sufficient evidence at trial to prove by a preponderance of the evidence that the FlexWave Prism meets each of these elements.

### A.    "…Performing a Training Phase…and Performing an Operating Phase…"

CommScope's argument that the FlexWave Prism does not meet the "performing a training phase…and performing an operating phase" limitations is predicated on Dr. Wood's incorrect application of the claim limitations as construed by the Court.[8] The parties agreed that the term "the power amplifier," which is recited throughout claim 1, "always refers to the same power amplifier that is introduced in the preamble," and the Court adopted that agreed construction. (Dkt. 97 at 8). The Court explained that claim 1 requires a system to have at least one power amplifier that covers all of the method steps. (*Id.*). Accordingly, even if a system has more than one power amplifier, it infringes claim 1 as long as at least one power amplifier meets all of the limitations. Dr. Wood's admission that when the feedback signal from one power amplifier is connected, the feedback signal from the other power amplifier is disconnected (A343 at 83:16-21) shows that the FlexWave Prism meets the "switching" limitation with respect to each one power amplifier.

Dr. Wood improperly based his conclusion that the FlexWave Prism has no training phase

---

[8] It is also a rehash of CommScope's failed summary judgment arguments. (Dkt. 206-1 at 39-40; Dkt. 360 at 11-15).

separate from the operating phase on his analysis of both power amplifiers, not just one. (*See* A342 at 80:10-13; A343 at 81:7, 81:12-17). According to Dr. Wood, the two phases happen simultaneously because the controller switches back and forth between the two power amplifiers to share feedback. (A343 at 82:5-83:18). However, Dr. Kenney explained that Dr. Wood's testimony was inconsistent with the Court's construction of "power amplifier" and therefore irrelevant. (*See* A366 at 43:1-44:11). *See also Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (expert testimony relying on incorrect claim construction was properly excluded as irrelevant).

CommScope's incorrect application of the agreed construction of "the power amplifier" is an attempt to improperly limit claim 1 to exclude all systems having multiple power amplifiers in alternating phases. Neither CommScope nor Dr. Wood point to any evidence indicating that claim 1 is meant to exclude such embodiments. *See Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1379 (Fed. Cir. 2001) (holding that it is improper to import limitation not supported by claim language or specification).

CommScope's claim that the Court "denied summary judgment based on the understanding that Dali's expert opined that the accused product is 'never' simultaneously in the training and operating phases" and that "Dali's expert did not present this theory a trial" (Mot. at 14-15) is disingenuous. As the Court acknowledged, Dr. Kenney described how one of the power amplifiers that infringe claim 1 is never simultaneously in the training and operating phases, but it could be in the training phase while another power amplifier is in the operating phase. (Dkt. 360 at 14).

CommScope claims that "Dali's expert did not present any substantial evidence that the accused product performs two separate phases" (Mot. at 15), but this is false. As Dr. Kenney addressed each of the recited steps of the training and operating phases at trial, he showed that the feedback signal was connected during the training phase and disconnected during the operating phase with respect to a single power amplifier. After describing the training phase of the accused product (A281 at 58:8-60:15), he explained the operating phase begins only when the accused product has "done the training"—i.e., the operating phase begins only when the training phase is

17

over. (A281-82 at 60:18-61:3). When he discussed the very first step of the operating phase, Dr. Kenney used a schematic of the predistortion component of the accused product to explain how the accused product places a controller in a non-operating state to disconnect signal from the power amplifier. (A282 at 61:4-17). Consistent with the Court's construction, his analysis focused on a single power amplifier of the accused product. (*Id.* at 61:18-62:7). Dr. Kenney's testimony provided substantial evidence that the accused device meets this limitation.

**B.      "…Switching a Controller to a Nonoperating State…"**

CommScope's claim that Dali did not present substantial evidence that the FlexWave Prism is capable of "switching a controller to a nonoperating state…"[9] (Mot. at 16) is also predicated on misapplication of the agreed construction of "power amplifier." Dissatisfied with the agreed construction, CommScope seeks to modify the construction of claim 1 so that "steps cannot be split between different power amplifiers," "but certain operations of the alleged controller can[not] be disregarded when there is a single controller for multiple PAs." (Mot. at 19). CommScope's motion and Dr. Wood fail to cite anything in the specification or file history that supports this. Moreover, the Court never suggested that its construction of "power amplifier" does not apply to the "switching a controller to a nonoperating state…" limitation. *See Arctic Cat, Inc. v. Bombardier Rec. Prods., Inc.*, No. 14-cv-62369-BLOOM/Valle, 2016 U.S. Dist. LEXIS 185998, at *68-70 (S.D. Fla. May 2, 2016) (denying summary judgment where "premise of BRP's argument is incorrect as the Claim Construction Order does not include any such requirement."). CommScope's effort to reconstrue "power amplifier" should be rejected.

Dr. Kenney testified that documents describing the functioning of the accused device show that the controller is switched off because they show a switch, the switch is associated with logic on an FPGA acting as a controller, and that placing that controller in a non-operative state disconnects signal from a single power amplifier. (A281 at 61:4-62:7). And Dr. Wood testified that when the "control selector switch" of the accused device is operating to listen to one amplifier,

---

[9]Dali addressed CommScope's argument that Dali's infringement position is inconsistent with Dali's invalidity position as to Wright (Mot. at 17-18) at IV.B.2, *supra*.

it is not operating to listen to the other. (A343 at 83:16-21). Whether the controller is in an operating state with respect to a second power amplifier at the same time is irrelevant. Dr. Kenney further explained to the jury how the FlexWave Prism's control selector switch meets the limitations of claim 1 by analogizing it to a toggle switch between two lights. (A366 at 43:8-44:11). In view of the evidence in the record, the jury reasonably found that Dali proved by a preponderance of the evidence that the FlexWave Prism infringes all limitations of claim 1.

## VI.   THE JURY CORRECTLY FOUND THE ASSERTED CLAIMS OF THE '473 PATENT ARE VALID

### A.   Sabat Does Not Anticipate Any Claim of the '473 Patent

CommScope's argument that Sabat (A665-76) anticipates claims 6, 9, 11, and 14 of U.S. Patent No. 9,531,473 ("the '473 patent") is based on a misreading of the key disputed limitation that is common to all four claims. (Mot. at 19-20). The disputed limitation reads:

> wherein the host unit is configurable to transmit a digital representation of a ***first subset*** of the plurality of downlink signals to the first remote unit and a digital representation of a ***second subset*** of the plurality of downlink signals to the second remote unit, ***the second subset being different than the first subset***

(A623) (emphasis added). Claims 6, 9, 11, and 14 all recite a host unit that can transmit at least a first subset of signals to a first remote, and a second subset of signals to a second remote, and the first and second subsets must be different from each other. Sabat does not teach or suggest this limitation, and the jury rightly found that it does not anticipate any claim of the '473 patent.

As Dali's expert, Dr. Harry Bims, explained at trial, Sabat teaches a simulcast system where copies of the same signal are sent to each remote; the '473 patent, in contrast, requires a host that is configured to distribute different subsets of signals to at least two different remotes. (A376 at 81:2-84:25). CommScope fell far short of its burden to show that Sabat anticipates any claim of the '473 patent. (A335 at 50:24-54:8). On the disputed limitation that is common to all asserted claims of the '473 patent, CommScope's expert, Dr. Anthony Acampora, provided a few sparse lines of testimony that failed to address the limitation's requirement of a host unit that can transmit different subsets of signals to different remotes. (A336 at 53:17-21). At best, Dr.

Acampora testified that different base stations can send different signals to different remotes. (*Id.*). But that is not what the claim requires. Unable to refute Dr. Bims' analysis, CommScope argues a straw man: "Nowhere does the claim language require the ability to 'unpackage' or take out contents of a signal one by one.'" (Mot. at 20). That is not the issue. CommScope avoids discussing what the disputed limitation requires and the evidence that Dr. Bims presented about it. The Court should not disturb the jury's finding that Sabat does not anticipate any claim of the '473 patent.

### B.      Sabat in Light of Bauman Does Not Render Claims 15 and 21 Obvious

CommScope limited its obviousness arguments to claims 15 and 21, both of which recite a daisy-chaining limitation. Dr. Acampora admitted that Sabat does not disclose daisy-chaining or anticipate claims 15 or 21. (A335 at 50:16-23). But, without offering any explanation or analysis, Dr. Acampora testified that Sabat, in combination with Bauman, renders claims 15 and 21 obvious. (*Id.*). The entirety of Dr. Acampora's testimony on this topic was confined to a single statement consisting of his conclusion:

> this is figure 2 from Baumann. And Baumann is showing daisy chaining of remote units. It's in the same field as the base station as the host unit, the remote units. It would be obvious to make the combination of Baumann with Sabat to get to Claims 15 and 21.

(A336 at 54:9-18). Besides failing to say anything of substance about this proposed combination, as detailed by Dr. Bims, Dr. Acampora's testimony failed to address any alleged motivation to combine the references. (A337 at 87:16-89:13). The jury correctly found this bare conclusion inadequate to demonstrate obviousness. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("obviousness…cannot be sustained by mere conclusory statements.")

CommScope attempts to expand on Dr. Acampora's unsupported conclusion, introducing arguments regarding the alleged motivation to combine Sabat and Bauman that were not presented at trial. (Mot. at 21). CommScope's untimely arguments are improper, and the Court should not consider them. *See Erfindergemeinschaft UroPep Gbr v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 653 (E.D. Tex. 2017) ("The Court will not grant a Rule 50(b) motion based on a theory that Lilly never

gave notice of in the pretrial order nor presented at trial.") But even if it were proper for CommScope to raise new arguments for the first time now, CommScope asks the Court to set aside the jury's verdict on the basis that both references are "directed to RF distribution systems." (Mot. at 21). The fact that two references are directed to similar fields of technology is not enough to infer a motivation to combine those references. *See Hamilton Beach Brands, Inc. v. f'real Foods, LLC*, 908 F.3d 1328, 1341-42 (Fed. Cir. 2018) ("substantial evidence supports the Board's finding. . . . [T]he prior art does not identify a reason *why* a POSITA would have been motivated to combine those limitations") (emphasis in original); *Navico Inc. v. ITC*, 696 Fed. Appx. 989, 997 (Fed. Cir. 2017) ("If all elements of the claims are found in a combination of prior art references, as is the case here, the factfinder should further consider whether a person of ordinary skill in the art would be motivated to combine those references"). At best, CommScope's untimely effort to do in its motion what Dr. Acampora failed to do at trial establishes that Sabat and Bauman are directed to similar technologies. That is not enough.

## C.     CommScope's § 112 Arguments Are Based on Misreading the '473 Patent

CommScope's argument that the asserted claims are invalid under § 112 restates its failed summary judgment argument. (Mot. at 21-22). The Court rejected CommScope's argument when it denied its summary judgment motion, and it should do so now.

First, CommScope alleges that the claimed host is not enabled or sufficiently described. But as Dali showed both in its opposition to CommScope's summary judgment motion and at trial, the specification expressly describes and enables the claimed host. The specification teaches a DAS configured with a host and multiple remotes. (A610 at Fig. 1; 5:36-39; A619 at 6:23-25). The host receives a composite signal comprising input from several cellular carriers (*e.g.*, Verizon, T-Mobile, etc., described in the specification as "Carriers 1-8") which can then be transported to various remotes. (A619 at 6:39-47). Within the host, software settings determine which remote receives which specific signals from Carriers 1-8. (*Id.* at 6:26-44). The specification describes the claimed scenario in which different subsets of signals are transmitted to different remotes. (*Id.* at 6:56-59; 6:63-65; A620 at 7:1-2; 7:9-12; 7:7-10; 7:30-36; 7:36-38; 7:39-45). It then details how

21

this is accomplished. (A617 at 1:52-56; A622 at 11:51-53; 11:64-67; 11:49-63). At trial, Dr. Bims confirmed these details. (A378 at 89:24-92:21). There is nothing new in CommScope's re-hashed argument.

Second, CommScope alleges that remote units that are able to "selectively forward" to another daisy-chained remote are not enabled. But the Court has already found that, even in the daisy-chain configuration, the specification teaches that individual remotes have the ability to selectively forward carrier signals; this functionality is controlled by the host. (A619 at 6:63-65). Leaving no room for doubt as to the host's flexibility, the specification teaches that the host can be configured to transport "any specific" signal available at the host to "any specific" remote. (A620 at 7:30-36). The specification explains that this capability is shown in FIG. 1, where a subset of carriers appear at the output of a remote. (*Id.* at 7:36-45).

Finally, CommScope's argument at trial suffered from a failure of evidence. To meet its heavy burden, CommScope did nothing more than put forth the conclusory testimony of Dr. Acampora. (A330-31 at 32:22-23; 33:14-18). For example, Dr. Acampora was asked whether the claims are enabled as to daisy-chaining; his brief testimony is not supported by any analysis, and was insufficient to meet CommScope's burden. (A335 at 49:11-15). The jury correctly rejected CommScope's argument, and the Court should not disturb its finding.

## VII. THE JURY CORRECTLY FOUND THE ION-E INFRINGES THE ASSERTED CLAIMS OF THE '473 PATENT

### A. CommScope's Expert Admitted the ION-E Infringes Claims 6, 11, and 21

At trial, CommScope ostensibly disputed that the ION-E meets the "wherein the host unit is capable of sending …" and "wherein the host unit is configurable to …" limitations of claims 6 and 11 of the '473 patent. But Dr. Acampora admitted that CommScope's ION-E product meets these limitations. (A337 at 59:23-60:21; A338 at 61:6-62:5; 62:11-21).[10] Because these are the

---

[10] Additionally, the testimony played at trial of CommScope Rule 30(b)(6) witness Roger Doles confirmed that the ION-E's host can route separate signals to different remotes. (Roger Doles 30(b)(6) Depo. Tr. at 68:3-14).

only limitations that CommScope attempted to dispute at trial, CommScope cannot credibly ask the Court to set aside the jury's finding as to claims 6, 11, and 21.

### B.      The ION-E Is "Capable of Packetizing" and Infringes Claims 9, 14, and 15

Claims 9, 14, and 15 are dependent claims that recite a common limitation: "capable of packetizing." The Court construed "packetizing" to mean "forming data into bundled units, which must include destination information such as within a packet header." (Dkt. No. 372 at 2). Relying on substantial evidence, Dr. Bims established that the ION-E meets this limitation. (A294 at 39:15-19; A300-01 at 64:20-68:15; *see also* A375 at 77:4-78:23).

CommScope's motion attempts to confuse the issue by relying on a series of hypotheticals. What matters here is that although Dr. Acampora testified that the ION-E is not capable of packetizing, (A331 at 34:4-12; A333 at 43:15-44:25), the entire basis for Dr. Acampora's testimony is testing results produced by, and conversations with, a CommScope employee named Roger Doles. (A331 at 34:7-12; 36:9-44:25). Mr. Doles' testimony, and Dr. Acampora's reliance on it, fail to refute Dr. Bims' showing that the ION-E is capable of, and indeed does, packetize data. Mr. Doles testified at trial that the "10 gigabit Ethernet links that connect different ION-E components" use "frames" (i.e., bundled units of data) that have a "destination" which is "inherent in the connection." (A325 at 10:11-23). Mr. Doles drew a very fine line that is not based on the Court's construction when he testified that "[s]oftware does not ever set those fields." (*Id.* at 10:20-23). No part of the claim itself or the Court's construction requires software in particular to set a destination address. (Dkt. No. 372 at 2). And it is undisputed that the ION-E forms bundles of data with a destination address. (A325 at 10:11-23). Moreover, as the Court previously recognized, "The plain language of the asserted claims only requires that the host unit be 'capable of packetizing,' not that each signal must be 'packetized.'" (Dkt. No. 360 at 24). Dali has established that the ION-E is "capable of packetizing," and thus infringes claims 9, 14, and 15.

###### C.    CommScope Cannot Rewrite the Claims to Avoid Infringement

CommScope repeats two previous failed attempts to rewrite the asserted claims. Each depends on alleged disclaimers made during an *inter partes* review that the Court has already rejected, finding that none of the statements cited by CommScope disclaim claim scope excluding "systems in which remote units are not capable of selectively forwarding specific radio resources to a downstream remote unit in a daisy-chain" or "where the transmission paths remain fixed until a switch is changed."(Dkt. No. 372 at 2).

First, CommScope argues that it does not infringe any claim because the ION-E cannot selectively forward signals between remotes arranged in a daisy-chain. (Mot. at 25-27). This is a repeat of CommScope's failed summary judgment argument. As Dali previously explained, CommScope's argument is defeated by the plain language of the claims since, of the claims asserted at trial, only claims 15 and 21 require daisy-chaining at all. (Dkt. No. 254-1 at 9-10). Moreover, CommScope's argument fails for the additional reason that even claims 15 and 21 are infringed when they are arranged in a hybrid topology. (Dkt. No. 254-1 at 11-12; Dkt. No. 360 at 25 ("CommScope does not satisfy its burden to establish non-infringement by showing that one possible configuration of its product does not infringe")). This is actually the second time CommScope has repeated this argument—the Court rejected CommScope's attempt to raise it in a belated claim construction motion on the eve of trial, ruling: "The context of this statement makes it clear that this is not a disclaimer." (Dkt. No. 372 at 3).

Second, CommScope argues that the ION-E does not infringe any claim because the transmission paths remain fixed until a switch is manually changed. (Mot. at 27-29).[11] Here, CommScope repeats the argument raised in its belated motion for claim construction which the Court denied. (Dkt. No. 372; *see also* Dkt. No. 361 at 20-23). Dr. Acampora testified that the claims require routing signals to different remotes without any input from a person—i.e., that the

---

[11] Relatedly, CommScope raises in a footnote a byzantine argument based on an unrelated fact stipulation. (Mot. at 28, n.11). It is difficult to discern what CommScope is trying to say, but it appears to ask the Court to infer something from the fact that Dali does not practice the '473 patent. Of course, the fact that Dali does not practice the '473 patent is not evidence that CommScope does not infringe it, nor is it evidence of any disclaimer.

host must be able to automatically detect where the signals are needed. (A338 at 62:23-64:25; *see also* A330 at 31:20-32:10). This was improper,[12] (A334-35 at 45:1-49:10), made worse by the fact that CommScope relied on ***demonstratives*** that Dr. Acampora prepared rather than anything disclosed in the patent. (A337 at 57:6-20).[13]

## VIII.   THE COURT SHOULD DENY COMMSCOPE'S PRO FORMA REQUEST FOR A NEW TRIAL

CommScope makes a pro forma request for a new trial, relying on general statements of law without specifically addressing what issues it believes should be retried. (Dkt. No. 451 at 29-30). The fact that CommScope does not like the jury's verdict is not a reason to grant a new trial. *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 737-38 (E.D. Tex. 2019) (denying motion for new trial where movant failed to demonstrate absolute absence of evidence to support jury's verdict). The Court should deny this baseless request.

## <u>CONCLUSION</u>

Dali respectfully requests the Court deny CommScope's Motion in its entirety.

---

[12] Dali objected during Dr. Acampora's testimony, and the Court cautioned the jury that "the determination of the infringement will depend on comparing the challenged product to the claims, not the specifications … when you are asked to determine infringement, you will confine yourself to the claims." (A334 at 45:20-25).

[13] Dr. Acampora could identify no basis for his rewriting of the claims, and his testimony should be given no weight. In fact, when he was shown that the title of the patent is "Remotely Reconfigurable Distributed Antenna Systems and Methods"—tying the claims to a DAS system that can be remotely reconfigured—he took the incredible position that "remotely" is a noun that refers to a remote unit in a DAS. (A339 at 65:8-66:6).

Dated: September 24, 2019

Respectfully submitted,

*Attorneys for Defendant/Counter Claimant Dali Wireless Inc.*

By: *s/ Cristofer Leffler*
Cristofer Leffler (*pro hac vice*)
Washington State Bar No. 35020
Stefan Szpajda (*pro hac vice*)
Washington State Bar No. 50106
Madeline Hepler (*pro hac vice*)
Washington State Bar No. 51597
Ryan Meyer (*pro hac vice*)
Washington State Bar No. 37832
David Tseng (*pro hac vice*)
Washington State Bar No. 48334
DORSEY & WHITNEY, LLP
701 5th Avenue, Suite 6100
Seattle, WA  98104
Tel:  (206) 903-8800
Email: leffler.cris@dorsey.com
Email: szpajda.stefan@dorsey.com
Email: hepler.madeline@dorsey.com
Email: meyer.ryan@dorsey.com
Email: tseng.david@dorsey.com

Mark Daniel Strachan
Texas State Bar No. 19351500
Richard A. Sayles
Texas State Bar No. 17697500
BRADLEY ARANT BOULT CUMMINGS LLP
1201 Elm Street, Suite 4400
Dallas, TX 75270
Phone: 214-939-8707
Fax: 214-939-8787
Email: mstrachan@bradley.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daniel J. Sheehan
State Bar No. 18174500
DANIEL J. SHEEHAN PLLC
Campbell Centre II, Suite 100
8150 N. Central Expressway
Dallas, Texas 75206
Email: dsheehan@dsa-law.com

Philip P. Caspers (*pro hac vice*)
Samuel A. Hamer (*pro hac vice*)
William F. Bullard (*pro hac vice*)
Nathan D. Louwagie (*pro hac vice*)
Alexander S. Rinn (*pro hac vice*)
CARLSON, CASPERS, VANDENBURGH LINDQUIST & SCHUMAN, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, Minnesota 55402
Email: pcaspers@carlsoncaspers.com
Email: shamer@carlsoncaspers.com
Email: wbullard@carlsoncaspers.com
Email: nlouwagie@carlsoncaspers.com
E-mail: arinn@carlsoncaspers.com

By: *s/ Cristofer Leffler*
Cristofer Leffler

27